IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ROBYN PENOR,

                Plaintiff,                        No.  CV-10-1056-HZ

        v.

MICHAEL J. ASTRUE, Commissioner,          OPINION & ORDER
Social Security Administration,

                Defendant.


David B. Lowry
9900 S.W. Greenburg Road
Columbia Business Center, Suite 130
Portland, Oregon 97223

        Attorney for Plaintiff
///
///
///
///
///
///


1 - OPINION & ORDER

S. Amanda Marshall
UNITED STATES ATTORNEY
District of Oregon
Adrian L. Brown
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

Franco L. Becia
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900

       Attorneys for Defendant

HERNANDEZ, District Judge:

       Plaintiff Robyn Penor brings this action seeking judicial review of the Commissioner's final decision denying her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-33, and Supplemental Security Income ("SSI") payments under Title XVI of the Act. 42 U.S.C. §§ 1381-83f. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). I affirm the Commissioner's decision pertaining to Penor's DIB application, and reverse the Commissioner's decision pertaining to her SSI application.

## PROCEDURAL BACKGROUND

       This case has a complicated procedural posture. Penor filed initial DIB and SSI applications on January 4, 2002, alleging disability since June 30, 1998. Tr. 16. The Commissioner denied these applications initially and upon reconsideration.[1] An administrative law judge ("ALJ") held a hearing

---

       [1]The record before this court does not contain the materials pertaining to Penor's 2002 benefit applications.

2 - OPINION & ORDER

on the matter April 5, 2004 (Tr. 373-408), and subsequently found Penor not disabled on May 21, 2004. Tr. 16. Penor requested that the Appeals Council reconsider this decision, but filed no further appeals. Id. Thus, the ALJ's April 5, 2004, decision was the Commissioner's final decision regarding Penor's 2002 applications.

Penor filed a second DIB application on December 27, 2005, again alleging disability since June 30, 1998. Tr. 69, 413. Penor also filed a second SSI application on January 17, 2006. Tr. 16. The Commissioner again denied these applications denied initially and on reconsideration (Tr. 52-62), and an ALJ held a hearing on November 14, 2007. Tr. 409-65. The ALJ issued a decision on April 19, 2008, finding Penor not disabled. Tr. 16-26. The Appeals Council denied review of the matter (Tr. 4-6), and Penor presently appeals.

### FACTUAL BACKGROUND

Penor initially alleged disability due to bipolar disorder. Tr. 87. At the time of her November 2007 hearing, she was 31 years old. She has a tenth-grade education and no past relevant work. Tr. 100. Relevant medical and other facts are cited in the discussion below as necessary.

### SEQUENTIAL DISABILITY EVALUATION

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. § 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the

twelve-month durational requirement. If the claimant does not have such a severe impairment, he is not disabled. 20 C.F.R. §§ 416.909; 416.920(a)(4)(ii).

At step three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations. If the impairment is determined to equal a listed impairment, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(iii).

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. § 416.920(e); Social Security Ruling ("SSR") 96-8p.

The ALJ uses this information to determine if the claimant can perform her past relevant work at step four. If the claimant can perform his past relevant work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). If the ALJ finds that the claimant's RFC precludes performance of his past relevant work the ALJ proceeds to step five.

At step five the ALJ must determine if the claimant is capable of performing work existing in the national economy. If the claimant cannot perform such work, she is disabled. 20 C.F.R. §§ 416.920(a)(4)(v); 416.920(f); Yuckert, 482 U.S. at 142; Tackett, 180 F.3d at 1099.

The initial burden of establishing disability rests upon the claimant. Yuckert, 482 U.S. 137, 146 n5; Tackett, 180 F.3d at 1098. If the sequential disability analysis reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." Tackett, 180 F.3d. at 1100. If the Commissioner meets this

burden the claimant is not disabled.  20 C.F.R. § 416.920(g); <u>Tackett</u>, 180 F.3d at 1099.

## THE ALJ'S DECISION

The ALJ first discussed the procedural history associated with Penor's 2002 DIB and SSI applications, and denied Penor's December 2005 DIB application under res judicata principles.  Tr. 16.

The ALJ subsequently considered Penor's January 2006 SSI application, and found her not disabled between the May 21, 2004, date she was previously found not disabled, and the April 19, 2008, date of the ALJ's decision presently under review.  Tr. 16-26.  Here the ALJ followed the familiar sequential analysis.

At step one, the ALJ determined that Penor did not engage in substantial gainful activity after her January 17, 2006, SSI application date.  Tr. 18.  The ALJ found Penor's psychotic disorder and obesity "severe" at step two in the sequential proceedings  found that these impairments did not meet or equal a listed disorder at step three (Tr. 19-20), and assessed Penor's RFC:

> [C]laimant has the residual functional capacity to perform light work . . . except claimant is able to sit for 8 hours in an 8-hour day for at least 2 hours at a time with normal breaks.  Claimant is able to stand for 6 hours in an 8-hour [day] for 1 hour at a time and then able to sit. Claimant is able to walk 1 block and lift at least 25 pounds.  Claimant has no postural and physical limitations.  Claimant is able to communication [sic] see, and hear without limits.  Claimant is able to work in a wide range of environments.  Claimant is limited to simple, repetitive tasks and is able to cooperate with the general public, coworkers, and supervisors.  Tr. 20.

At step four, the ALJ found that Penor had no past relevant work under the Commissioner's regulations, but found Penor able to perform work in the national economy at step five.  Tr. 24-25. The ALJ therefore found Penor not disabled.  Tr. 26.

**STANDARD OF REVIEW**

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Bray v. Comm'r of the Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray*, 554 F.3d at 1222 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. Id. (citing Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006)), see also Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, this court cannot now rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. Bray, 554 F.3d at 1225-26 (citing SEC v. Chenery Corp., 332 US 194, 196 (1947)); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (citing same).

**DISCUSSION**

Penor argues that the ALJ erred regarding (1) res judicata pertaining to her DIB application; (2) her testimony; (3) the lay testimony; (4) the opinions of two treating physicians and a medical expert; (5) her RFC assessment; and (6) his finding that she could perform work in the national economy.

## I.   Res Judicata

The ALJ described the history associated with Penor's 2002 DIB and SSI applications, noted that an ALJ found her not disabled pertaining to both claims on May 21, 2004, and that Penor did not appeal this decision. Tr. 16.  The ALJ concluded that, under res judicata principle, Penor cannot later establish disability pertaining to the period leading to the ALJ's May 21, 2004, decision.  Id. Penor's current Title II DIB claim, filed December 27, 2005, requires that she establish disability before her March 31, 1999, date last insured.  Tr. 16.  The ALJ therefore concluded that Penor's December 27, 2005, DIB claim failed.  Id.

Res judicata principles apply in the context of social security applications and appeals. Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988).  Absent "changed circumstances," a claimant cannot raise an issue that has previously been litigated.  Id.  A claimant's attainment of "advanced age" under the Commissioner's regulations constitutes a "changed circumstance."  Id.   A new impairment also constitutes a "changed circumstance," Lester v. Chater, 81 F.3d 821, 827 (9th Cir. 1995), but the Ninth Circuit has found that continuing treatment for an existing impairment does not. Kirk v. Sullivan, 888 F.2d 1394 (9th Cir. 1989)(not for publication).[2]

Penor now asserts that the ALJ's res judicata finding was erroneous because the ALJ "did not examine whether there exists a new impairment or a new issue or whether Dr. McDevitt's testimony about plaintiff meeting a listing section as of her 1998 alleged onset date, [sic] precludes an application of the doctrine of res judicata." Pl.'s Opening Br. 25-26.  The Commissioner replies that, in disability proceedings, res judicata is suspended only when the claimant raises a colorable

---

[2]Cited in accordance with 9th Cir. R. 36-3, which allows citations to unpublished cases promulgated after January 1, 2007.  9th Cir. R. 36-3.  Because this case was issued prior to January 1, 2007, it is not dispositive.

constitutional claim. Def.'s Br. 5-6.

Both parties incorrectly construe the application of res judicata to the present case. As a preliminary matter, res judicata does not apply in appeals pertaining to a finding of disability when "changed circumstances" arise. Chavez, 844 F.2d at 693. Penor does not presently point to any new impairment or other circumstances that would preclude application of res judicata to her December 27, 2005, DIB application. Pl.'s Opening Br. 25-26. The ALJ's finding that the doctrine applies to that application is therefore affirmed.

The opinion below addresses Penor's January 17, 2006, SSI application as it pertains to the period after May 21, 2004.

## II.    Penor's Testimony

Penor asserts that the ALJ erroneously evaluated her testimony. Pl.'s Opening Br. 19-20.

### A.    Credibility Standards

The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence, and other evidence." 20 C.F.R. § 416.929(a). Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. Lingenfelter, 504 F.3d at 1036 (citing Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (citing Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991)(en banc)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily

activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. Smolen, 80 F.3d at 1284. The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. Id. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." Robbins, 466 F.3d at 883; see also Bunnell, 947 F.2d at 346-47.

**B.    Analysis**

Penor alleges that the ALJ failed to provide "clear and convincing" reasons for finding her not credible, and specifically asserts that the ALJ erroneously found her symptom testimony inconsistent with his assessment of her RFC. Id. at 20. Though Penor points to various legal standards addressing credibility determinations, she does not identify any other errors made by the ALJ. Id. The Commissioner replies that the ALJ articulated numerous other reasons for finding Penor's symptom testimony not entirely credible. Def.'s Br. 9.

The ALJ's analysis pertaining to Penor's credibility cited her activities of daily living and medical record. Tr. 21-22. The ALJ's credibility analysis may cite a claimant's daily activities and medical record. Smolen, 80 F.3d at 1284. Here the ALJ may cite a claimant's medical record in conjunction with other factors. Robbins, 466 F3d at 883. Penor's argument fails to acknowledge that the ALJ made such findings, and does not challenge them. Her assertion that the ALJ based his credibility analysis only upon his RFC conclusion is not based upon the record. The ALJ's credibility findings are therefore affirmed.

**III.   Medical Source Statements**

Penor alleges that the ALJ improperly evaluated the opinions of treating psychiatrists Drs.

Cason and Roffe, and inappropriately relied upon the opinion of medical expert Dr. McDevitt.

**A.      Standards: Medical Source Statements**

Disability opinions are reserved for the Commissioner.  20 C.F.R. § 416.927(e)(1).  When making that determination, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  The ALJ must also generally give greater weight to the opinion of an examining physician over that of a reviewing physician, and if two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician in favor of an examining physician.  Id.  The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings."  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).  A reviewing physician's opinion standing alone may not constitute substantial evidence in rejecting the opinion of a treating or examining physician.  Lester, 81 F.3d at 831.

**B.      Treating Physicians**

**1.      Treating Psychiatrist Dr. Cason**

Penor asserts that the ALJ erroneously rejected psychiatrist Dr. Cason's opinion regarding her concentration, persistence, and pace.  Pl.'s Opening Br. 16.

**i.      Dr. Cason's Opinion**

Dr. Cason oversaw Penor's care at Columbia County Mental Health ("CCMH") between January 18, 2006, and June 7, 2006.  During this time, Dr. Cason performed four evaluations with associated progress reports.  Tr. 271-76, 278-82.

On January 18, 2006, Dr. Cason noted Penor's history of five hospitalizations between 1999 and 2006 "with symptoms seemingly indicative of Bipolar or Schizoaffective Disorder though there

has been quite a question as to whether they were related to substance induced psychosis rather than for example, symptoms of mental illness that were exacerbated by substance abuse." Tr. 278. Dr. Cason twice stated that this distinction was unclear to her (Tr. 280-81), and diagnosed "Probable Schizoaffective Disorder, with a history of methamphetamine use, marijuana use without a recent UA to validate recent abstinence of the latter." Tr. 281.

Dr. Cason discussed the effect of Penor's atypical psychotic medication upon her pregnancy on February 22, 2006. Tr. 276. On May 10, 2006, Dr. Cason noted that Penor was "generally euthymic during our appointment," repeated her Schizoaffective Disorder diagnosis, and again noted her uncertainty regarding the effect of Penor's history of substance abuse upon this diagnosis. Id. At the end of this report, Dr. Cason wrote that Penor refused to complete a drug screen test stating that providing a urine sample was "against my religion." Tr. 273.

Dr. Cason completed a mental status report form on April 6, 12, 2006, noting Penor's recent history and Penor's daily activities and engagement in group activities. Tr. 204-05. Here Dr. Cason stated that Penor experiences workplace difficulties, but concluded that she was "somewhat successful in a structured work setting with support." Tr. 205.

Finally, Dr. Cason evaluated Penor on June 7, 2006, again assessing a differential diagnosis of Bipolar Disorder or Schizoaffective Disorder, with a history of substance abuse. Tr. 272. He stated that Penor's mood "appeared euthymic," with "no evidence of formal thought disorder, psychosis, or suicidality," and continued to prescribe Abilify. Id.

### ii.    The ALJ's Findings Regarding Dr. Cason

The ALJ discussed Dr. Cason's treatment notes in assessing Penor's RFC. Tr. 22-23. The ALJ first cited Dr. Cason's January and April 2006 treatment reports, specifically noting that Penor

had "done very well in the last 2 ½ years on medication," and Dr. Cason's observation that Penor

had "some difficulty comprehending and following directions and great difficulty maintaining an

adequate pace for most employment." Tr. 22.  The ALJ continued, "while giving this opinion some

weight, Dr. Cason also noted that claimant often got frustrated and stopped working on her own."

Id.  Finally, the ALJ discussed Dr. Cason's report that Penor's condition was well-controlled with

medication and that her mental status examinations "for the most part" were within normal limits.

Id.  The ALJ also cited Dr. Cason's May 2006 report that Penor refused to provide a urine sample

for drug testing, and stated that the record showed that Penor was inconsistent in following treatment

recommendations at this time.  Id.

### iii.      Analysis: Dr. Cason

Penor now asserts that the ALJ omitted Dr. Cason's opinion that she "often" had difficulties

in persistence and pace.  Pl.'s Opening Br. 16.  Penor's indicated citation, in full, shows that on April

12, 2006, Dr. Cason and Harley Klein, Psychiatric Mental Health Nurse Practitioner, concurrently

completed a mental status report for Penor.  Tr. 204-905.  They wrote:

> Robyn has difficulty with concentration for long periods of time.  She
> has difficulties with persistence and has often had difficulty
> maintaining a good pace to maintain her employment.  She often gets
> frustrated and is either terminated or stops working on her own . . .
> Robyn has had a lot of difficulty with work.  She has some difficulty
> comprehending and following directions and has a great deal of
> difficulty maintaining an adequate pace for most employment.  She
> has been somewhat successful in a structured work setting with
> support.  Tr. 205.

The ALJ gave this opinion "some" weight, and inferred that Penor stopped working for

reasons unrelated to her impairment.  Id.  Here the ALJ noted Dr. Cason's observation that Penor

"often got frustrated and stopped working on her own," and noted that Penor left a job because she

wanted more hours. Id. However, the ALJ omitted consideration of Dr. Cason's findings regarding Penor's difficulty concentrating for long periods of time. Tr. 205. While this court must affirm the ALJ's inferences reasonably drawn from the record, Batson, 359 F.3d at 1193, it may not isolate a quantum of evidence in affirming the ALJ's decision. Lingenfelter, 504 F.3d at 1035 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). The ALJ's findings regarding Dr. Cason's opinion of Penor's workplace functioning improperly omitted Dr. Cason's assessment addressing Penor's ability to sustain concentration. The effects of this error are described below. Infra, 25-27.

However, the record supports the ALJ's specified factual findings regarding Dr. Cason's opinion regarding Penor's medication and behavior associated with requests for a urine sample. Tr. 273. This finding is affirmed.

### 2.    Treating Physician Dr. Roffe

Penor also asserts that the ALJ erroneously rejected treating psychiatrist Dr. Roffe's May 2005 Global Assessment of Functioning ("GAF")[3] findings, arguing that the ALJ improperly substituted her own opinion for that of Dr. Roffe. Pl.'s Opening Br. 17 (citing Tr. 291).

### i.    Dr. Roffe's Opinion

Dr. Roffee conducted a progress report for CCMH on May 25, 2005. Tr. 290-93. This report included a lengthy reiteration of Penor's history, describing her drug use and grandiose thinking. Tr. 293. Dr. Roffe noted that, as of May 25, 2005, Penor reported auditory hallucinations approximately once a month, but denied current grandiose thinking. Tr. 292. Dr. Roffe assessed

---

[3]The GAF scale is used to report a clinician's judgment of the patient's overall psychological, social and occupational functioning on a scale of 1 to 100. It does not include impairment in functioning due to physical or environmental limitations. Am. Psychiatric Ass'n, Diagnostic and Statistical Manual, 4th ed., Text Rev. (2002), 34.

13 - OPINION & ORDER

Schizoaffective Disorder, with a history of substance abuse in remission, and estimated Penor's GAF at 45.  Tr. 291.

### ii.       The ALJ's Findings Regarding Dr. Roffe

The ALJ discussed Dr. Roffe's May 25, 2005, treatment note, and found Dr. Roffe's GAF assessment of 45 inconsistent with her "other findings." Tr. 21.  Here the ALJ noted Dr. Roffe's concurrent report that Penor's affect was pleasant and appropriate, that Abilify stabilized Penor's mood and decreased her racing thoughts, and that Penor was living independently and was stable with medication management and case support.  Id.

### iii.      Analysis: Dr. Roffe's Opinion

The record shows that Dr. Roffe statement regarding Penor's independence, in entirety, reads: "Although Robyn is living independently now, she still is in need of a great amount of support.  She is given her medications every two weeks and is monitored carefully because medication compliance has been a chronic problem for her in the past." Tr. 292.  The ALJ's citation to Dr. Roffe's notation that Penor is "independent" misconstrues Dr. Roffe's statement and is not sustained.

Further, a GAF between 41 and 50 indicates, "Serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." DSM, 34.  Nothing in Dr. Roffe's opinion suggests Penor's functioning was inconsistent with this description.  The ALJ's finding on this point is therefore not sustained.

Finally, Penor asserts that the ALJ should have "recontacted" Dr. Roffe to determine the basis of her opinion.  Pl.'s Opening Br. 17.  The ALJ has a duty to develop the record when the claimant's onset date is ambiguous, Armstrong v. Comm'r, 160 F.3d 587, 590 (9th Cir. 1998), or

when the record is too inadequate for the Commissioner to make a proper disability determination. 20 CFR § 416.913(e); Bayliss, 427 F.3d at 1217.  The ALJ's duty is heightened when a claimant is unrepresented, Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003), but such reasoning does not apply when the record reflects no impairment or associated limitations.  Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005).   Neither party suggests the record is ambiguous or inadequate.  Further, Penor was represented by counsel in her hearing before the ALJ, who had opportunity to submit additional evidence into the record.  Tr. 459.  For all of these reasons, Penor fails to establish that the ALJ should have developed the record regarding Dr. Roffe's GAF analysis.  This argument therefore fails.

In summary, the ALJ's finding that Dr. Roffe's RFC assessment was "inconsistent" with her own opinion is not based upon the record.  The effect of this error is discussed below.  Infra, 25-27.

### B.     Medical Expert Dr. McDevitt

Psychiatrist Dr. McDevitt testified at Peron's November 14, 2007, hearing.  Tr. 441-42, 449-459.  Dr. McDevitt first summarized Penor's 2002 hospitalization dates.  Tr. 441-42.  Dr. McDevitt's subsequent testimony addressed Penor's the medical record pertaining to Penor's psychiatric history. Tr. 449-59.

### 1.     Dr. McDevitt's Testimony

Dr. McDevitt discussed Penor's "history of recurrent psychotic episodes with fairly short life, which in the records are not clear whether these are due or not due to drug abuse."  Tr. 451.  He noted Penor's planned pregnancy and marijuana use, and concluded, "she basically has some kind of ongoing schizoaffective disorder I suspect that goes into remission with relatively low doses of medication."  Tr. 451.  Dr. McDevitt noted that Penor had received Abilify throughout much of the

period under review, and Penor's "tremendous" weight gain when she received "heavy doeses" of

Lithium and Risperdal between 2002 and 2004. Tr. 452. He stated that treating physicians assessed

a GAF of 65 to 70 during the course of Penor's 2006 pregnancy, and that Nurse Klein assessed a

GAF of 45 which "doesn't seem credible based on [Penor's] other activity." Tr. 452. Dr. McDevitt

concluded:

> I suspect her condition in general whatever she had in the way of an
> illness has been more or less in remission with medication over the
> last at least three years if not further given the period of time of two
> years that she was probably overmedicated and over treated to the
> point that she was – gained tremendous amount of weight. Tr. 452.

He also noted that the record showed that Penor did not take medication for a period of six months

in 2001, and that the record did not show relapse at this time. Tr. 453.

Finally, Dr. McDevitt testified that he believed Penor's decision to move to Alaska in

September and October 2005 showed poor judgment, and noted that Penor's first psychosis followed

the use of LSD, which "would indeed be clinically appropriate." Tr. 453-54.

## 2.    Analysis: Dr. McDevitt's Opinion

The ALJ reiterated Dr. McDevitt's testimony, and made no clear finding accepting or

rejecting it. Tr. 23.

Penor argues that the ALJ's decision misconstrued Dr. McDevitt's testimony regarding her

medication side effects in 2003 and 2004. Pl.'s Opening Br. 15. She specifically asserts that Dr.

McDevitt's testimony regarding her "state of remission" in 2003 was inconsistent with his testimony

regarding her medication side effects in 2003 and 2004. Id.

Penor's submission reflects Dr. McDevitt's statements respectively regarding remission and

medication side effects. Tr. 452. However, Dr. McDevitt made no inference that Penor's excessive

16 - OPINION & ORDER

weight gain due to antipsychotic medications was inconsistent with a finding that her illness was concurrently in remission. Penor's argument misconstrues Dr. McDevitt's testimony and is not sustained.

Penor also asserts that Dr. McDevitt found that she met Listing 12.03 at step three in the Commissioner's disability analysis. Pl.'s Opening Br. 16. She cites Dr. McDevitt's testimony that, between June 1998 and June 2005, she met the Listing "at least 30 percent of the time." Id. (citing Tr. 457-58). Penor's submission again accurately cites Dr. McDevitt's testimony, but again misinterprets the ramifications of that testimony. Dr. McDevitt first testified that Penor did not meet the Commissioner's listing for a twelve-month period. Tr. 454. Upon questioning, Dr. McDevitt affirmed that "there were times" between June of 1998 and June of 2005 that Penor met the Commissioner's listings, and, upon questioning, stated that, though the medical record was not clear on the matter, he thought the percentage of time "would be probably as high as 30 percent." Tr. 457. To establish disability at step three in the sequential analysis, a claimant must show that she meets or equals the Commissioner's indicated listing for a continuous period of at least twelve months. 20 C.F.R. §§ 416.925(c)(3); 416.909. Dr. McDevitt's testimony does not establish such a correlation. Penor's submission on the matter is therefore rejected.

### C.   Conclusion: Medical Source Statements

In conclusion, the ALJ's findings pertaining to Drs. Cason and Roffe are not properly based upon the record, as indicated, and are not sustained. Penor fails to establish reversible error regarding Dr. McDevitt's opinion.

### IV.   Lay Testimony

Penor also asserts that the ALJ erroneously evaluated lay testimony submitted by her

husband, Zachary Penor, and her mother-in-law, Darla Mudd.  Pl.'s Opening Br. 18.  The ALJ cited

their testimony, and gave it "some weight regarding [Penor's] abilities" but found the testimony

"inconsistent with the medical evidence and [Penor's] current job history."  Id.

### A.      Standards: Lay Testimony

The ALJ has a duty to consider lay witness testimony.    20 C.F.R. §§ 416.913(d),

416.945(a)(3); Bruce v. Astrue, 557F.3d 1113, 1115 (9th Cir. 2008).  Friends and family members

in a position to observe the claimant's symptoms and daily activities are competent to testify

regarding the claimant's condition.  Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993).  The

ALJ may not reject such testimony without comment and must give reasons germane to the witness

for rejecting his testimony.  Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996).  Silent omission

of lay testimony is harmless only when it is inconsequential to the ultimate determination of

nondisability.  Stout v. Barnhart, 454 F.3d 1050, 1055 (9th Cir. 2005).

### B.      Analysis: Lay Testimony

#### 1.      Zachary Penor

##### i.      Zachary Penor's Testimony

Zachary Penor submitted completed a questionnaire regarding Penor's functioning on March

18, 2006.  Tr. 121-28.  He stated that in the course of the day, Penor takes her medication, eats,

showers, listens to the radio, checks the mail, naps, walks one mile, makes dinner, watches

television, and plays cards.  Tr. 121.  He wrote that he helps her "with visual problems," and that

Penor reported to him that her memory used to be better.  Tr. 122.  Penor "will wake up manic in the

middle of the night.  Other times she is too sleepy to go through a day."  Id.  He also stated that she

"sometimes" forgets to attend to personal grooming or change her clothes, and that she requires

reminders for these things when her routine is disturbed.  Tr. 123.  Penor prepares microwave meals, sandwiches, meats, and potatoes, but forgets old recipes.  Id.  She cooks, wipes counters, does laundry, and sweeps, and requires encouragement to do these things because she has a "horrible" memory.  Id.

Zachary Penor also wrote that Penor goes outside daily, and occasionally gets lost walking or using public transportation.  Tr. 124.  She performs basic food shopping, but does not pay bills. Tr. 124.  Her hobbies include listening to the radio, making jewelry, playing cards, and "spending time with her husband."  Tr. 125.  Penor also talks on the phone, and "gives humble advice" one to four times per month, and additionally attends church, goes to the bank, and attends medical appointments.  Id.  Zachary Penor endorsed limitations in Penor's ability to talk, hear, understand and follow instructions, complete tasks, concentrate, and memorize information.  Tr. 126.  He also stated that Penor does not get along well with authority figures, handles stress "calmly or walks," and does not handle changes in routine well.  Tr. 127.  Penor uses a day planner at his suggestion. Id.  In conclusion, Zachary Penor wrote that Penor "can't hold a job due to memory and other mental problems [sic] example forgets hours."  Tr. 128.

### ii.    Analysis: Zachory Penor's Testimony

The ALJ gave Zachory Penor's testimony "some weight regarding claimant's abilities," but found "his assessment of claimant's limitations inconsistent with the medical evidence and her current job history."  Tr. 23.

Penor asserts that the ALJ failed to properly address her husband's testimony, citing the ALJ's finding regarding the lay testimony and the medical evidence.  She does not challenge the ALJ's finding regarding Penor's work history and the lay testimony, and does not explain the effect

19 - OPINION & ORDER

of the ALJ's alleged error.  Pl.'s Opening Br. 18-19.  The Commissioner replies that an ALJ may reject lay testimony that conflicts with medical evidence,  Def.'s Br. 18, citing Vincent v. Heckler, 739 F.3d 1393, 1395 (9th Cir. 1984).

Penor does not challenge the ALJ's findings regarding the lay testimony and Penor's work history.  The ALJ must provide germane reasons for rejecting lay testimony.  *Nguyen*, 100 F.3d at 1462.  Citation to a claimant's work history is sufficient, and this finding is therefore affirmed.

Regarding the medical evidence and lay testimony, the ALJ may reject lay testimony that directly conflicts, or is inconsistent with, such evidence.  Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001).  However, the ALJ may not reject lay testimony merely because it is uncorroborated, or unsupported, by the medical evidence.  Bruce, 557 F.3d at 1116; see also Glover v. Astrue, No. 10-824, slip. op. at 15 (December 6, 2011).

The ALJ's finding that Zachary Penor's testimony is "inconsistent" with the medical record is sufficient under this standard.  However, the ALJ's analysis of the medical evidence discussed above is flawed.  Therefore, the ALJ's rejection of Zachary Penor's testimony, to the extent it relied upon the opinions of Drs. Cason and Roffee, cannot be sustained.  The effects of this error are discussed below.  Infra, 25-27.

### 2.    Darla Mudd

Penor also challenges the ALJ's assessment of Mudd's testimony, but again fails to identify the effect the alleged error upon the ALJ's findings.  Pl.'s Opening Br. 18.

### i.    Darla Mudd's Testimony

Mudd completed a third party function report on July 19, 2007.  Tr. 171-80.  She stated that she sees Penor weekly, and that they visit, shop, and care for Penor's baby.  Tr. 171.  Penor cares for

her own baby and her husband, but Mudd and Penor's husband both remind Penor to clean, take her medications, and keep things organized.  Tr. 172.  Penor forgets to bathe and brush her hair, and that, regarding Penor's use of the toilet, she "sometimes soils pants or dress."  Tr. 172.  Penor requires reminders to take her medications, shower, brush her teeth, and perform household cleaning.  Tr. 175.  Mudd also wrote that Penor takes "too long" to perform chores because she is easily distracted. Id.  She shops for food and necessities weekly, and this takes "too long" because she has trouble concentrating.  Tr. 173-74.  Penor has trouble managing money.  Tr. 174.  Her hobbies include cards and crafts, but she "rarely has time."  Tr. 175.  Finally, Mudd endorsed that Penor has difficulties in talking, hearing, memory, understanding, concentration, following instructions, and in completing tasks.  Tr. 16.  Penor can walk ten minutes before requiring a five minute rest, and has difficulty following instructions because she has trouble retaining information.  Tr. 176.  Finally, Mudd stated that Penor has been fired from jobs because "bosses always say she is too slow."  Tr. 177.

### ii.      Analysis: Darla Mudd's Testimony

The ALJ noted this testimony, and gave it "some weight regarding claimant's abilities" but found Mudd's "assessment of claimant's limitations inconsistent with the medical evidence and her current job history."  Id.  Under the reasoning articulated above, this analysis is sufficient.  Supra, 19-20.  However, as noted, the ALJ's findings on the matter cannot be affirmed to the extent they are predicated upon the reports of Drs. Cason and Roffe.  The effects of this error are discussed below.  Infra, 25-27.

### C.      Conclusion: Lay Testimony

In summary, the ALJ adequately cited Penor's work history in rejecting the lay testimony. However, the ALJ's rejection of the lay testimony in conjunction with the medical record cannot be

sustained in light of the ALJ's errors regarding Drs. Cason and Roffe.

## V.    RFC Assessment

Penor asserts that the ALJ failed to follow the Commissioner's Administrative Ruling regarding the opinions of Drs. Cason, Roffe, and McDevitt, and her own testimony.    She subsequently asserts that this alleged error undermines the ALJ's RFC analysis.    Pl.'s Opening Br. 22 (citing SSR 96-8p).

Social Security Ruling 96-8p, entitled "Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims," addresses assessment of a claimant's RFC.  SSR 96-8p (available at 1996 WL 374184).  The Ruling defines the RFC assessment and instructs the ALJ to make narrative findings in construing a claimant's RFC.  *Id.* at *2, 7.  The Ruling also instructs the ALJ to consider "all relevant evidence" in making RFC findings, and to address both the claimant's exertional and nonexertional capacity.  *Id.* at *5-6.

The ALJ provided sufficient reasons for rejecting Penor's testimony.  The opinions of Drs. Cason, Roffe, and McDevitt, are discussed above.  This evidence will not be discussed again.  The effect of the errors the ALJ made pertaining to the opinions of Drs. Cason and Roffe is discussed below.  Infra, 25-27.

## VI.    Step Five Findings

Finally, Penor asserts that the ALJ's erroneously found that she could perform work in the national economy.  Pl.'s Opening Br. 23.  She argues that the ALJ's made improper findings regarding availability of work in the national economy, and erroneously omitted limitations from her RFC.  Id.

///

22 - OPINION & ORDER

**A.      Standards: Step Five**

At step five in the sequential proceedings, the ALJ determines if the claimant can perform work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). Here the ALJ may take administrative notice of the occupational data contained in the <u>Dictionary of Occupational Titles</u> ("<u>DOT</u>"), or draw upon a vocational expert's testimony to show that a claimant can perform work in the national economy. 20 C.F.R. § 416.966(d-e). The ALJ's questions to the vocational expert must include all properly supported limitations. <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1165 (9th Cir. 2001). The ALJ may rely upon a vocational expert's testimony rather than the <u>DOT</u> when the issue is "complex," 20 C.F.R. § 416.966(e), or when "the record contains persuasive evidence to support the deviation." <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1435 (9th Cir. 1995). Such evidence includes available job data and a claimant's specific limitations. <u>Id.</u> The decision to use a vocational expert is reserved for the Commissioner. 20 C.F.R. § 416.966(e).

**B.      Analysis: Step Five Findings**

**1.      Reliance Upon the Vocational Expert**

Penor asserts that her own data establishes that the vocational expert's testimony regarding jobs in the national economy is erroneous. Pl.'s Opening Br. 23-25. Penor's counsel has previously made this argument to the Ninth Circuit, which rejected it and held that, while an ALJ must explain his rejection of significant or probative evidence, evidence submitted by counsel regarding available jobs was neither significant nor probative. <u>Crane v. Shalala</u>, 224 Fed. Appx. 574, 578 (9th Cir. 2007) (unreported) (citing <u>Vincent v. Heckler</u>, 739 F.2d 1393, 1394-95 (9th Cir. 1985)). The Ninth Circuit specifically noted that the evidence counsel submitted did not provide additional information regarding job availability, and, furthermore, the ALJ already had a proper source for the such

information, namely the vocational expert's testimony, based upon the DOT. Id. This court has repeatedly relied upon such reasoning in rejecting this argument. Jaynes v. Astrue, 2011 WL 1630808 at * 7 (D. Or. Apr. 29, 2011); Nelson v. Astrue, 2011 WL 39826 at *7 (D. Or. Jan. 5, 2011); Rakes v. Astrue, 2011 WL 11175 at *7 (D. Or. Jan. 3, 2011).

The instant case again presents the same facts that were litigated in Crane. Penor submitted copies of letters from the U.S. Department of Labor and Oregon Employment Department describing their respective job-tracking activities. Tr. 195-201. These documents are respectively undated, or dated in 1997 and 2003. Id. They do not reference the number of jobs available in either the national or local economy. Id. Therefore they do not constitute significant or probative evidence regarding the availability of jobs in the national economy as this information pertains to Penor's allegation of disability. As noted, the ALJ is not required to consider evidence neither significant nor probative. Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003); see also Vincent, 739 F.2d at 1394-95. In accordance with this court's previous holdings, Penor's argument regarding available data addressing jobs in the national economy is rejected.

### 2.     Hypothetical Questions to Vocational Expert

Because the ALJ did not properly assess the opinions of Drs. Cason and Roffe, or the lay witness testimony, his questions to the vocational expert did not include all properly supported limitations. Such an omission is erroneous. Osenbrock, 240 F.3d at 1163-65. Therefore, the ALJ's step five findings should not be affirmed. The effects of this error are addressed below.

## VII.   Remand

The ALJ erroneously evaluated the opinions of Drs. Cason and Roffe. This error subsequently tinged his analysis of the lay testimony. Consequently, the ALJ's RFC analysis was

flawed, and his conclusions cannot be sustained.

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000), cert. denied, 531 US 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. Strauss v. Comm'r, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir 2004)). The court may not award benefits punitively, and must conduct a credit-as-true analysis to determine if a claimant is disabled under the Act. Id. at 1138.

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Id. The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003) (citing Bunnell, 947 F2d at 348). The reviewing court declines to credit testimony when "outstanding issues" remain. Luna v. Astrue, 623 F.3d 1032, 1035 (9th Cir. 2010).

The ALJ's analysis the opinions of Drs. Cason and Roffe, and the lay testimony, is erroneous for the reasons discussed above. The ALJ's subsequent RFC assessment and hypothetical questions to the vocational expert at step five in the sequential disability analysis are therefore not based upon

the proper legal standards.

In determining whether to award benefits or remand the matter for further proceedings the court must determine whether "outstanding issues remain in the record" under the second prong. Strauss, 635 F.3d at 1138.  Neither party asserts that the record is insufficient, and the court finds the record sufficiently developed.

Therefore the court must finally determine whether the record clearly requires an award of benefits after the improperly rejected evidence is credited.  Id.  Dr. Cason stated that Penor has difficulty "with concentration for long periods of time," and with persistence and maintaining a pace in her activity. Tr. 205.  Dr. Roffe stated that Penor requires support in independent functioning, and that she functions with a GAF of 45.  Tr. 291-92.

Penor's counsel did not ask the vocational expert to consider additional limitations. Tr. 464. This court therefore cannot make a determination regarding the effects of these limitations.  Further, the record suggests that Penor's drug use has, at times, contributed to her limitations.  The Act and the Commissioner's regulations prohibit payment of benefits when drug and alcohol use is a material factor in a claimant's disability. 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 416.935.

Thus, outstanding issues must be resolved before a determination that award of benefits is inappropriate.  In such instances, the court declines to credit the improperly omitted testimony. Luna, 623 F.3d at 1035.  The matter must be remanded for further proceedings to address the opinions of Drs. Cason and Roffe, and the lay testimony.  If necessary, the ALJ must then revise his RFC determination.  The ALJ must subsequently make adequate step four and five findings incorporating any revised findings, and, if necessary, address any effect of Penor's drug use under 20 C.F.R. § 416.935.

26 - OPINION & ORDER

## CONCLUSION

For these reasons, this court AFFIRMS the Commissioner's final decision pertaining to Penor's December 27, 2005, DIB application, and REVERSES the Commissioner's final decision pertaining to Penor's January 17, 2006, SSI application.  The Court REMANDS this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings addressing Penor's 2006 SSI application consistent with this opinion and order.

IT IS SO ORDERED.

Dated this ___23rd___ day of December, 2011.

_/s/ Marco A. Hernandez_____
Marco A. Hernandez
United States District Judge